UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ARLEN JOSEPH BROWN | CIVIL ACTION NO. 06-cv-0280 |
| VERSUS | JUDGE HICKS |
| RICHARD STALDER, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Arlen Brown ("Plaintiff") is an inmate housed at the David Wade Correctional Center ("DWCC"). He filed this pro se civil rights complaint against several prison officials and medical staff based on allegations of inadequate medical care and related misconduct. Defendants responded with a Motion to Dismiss (Doc. 41) that was noticed for briefing. Plaintiff's opposition was due in May of 2008, but he has filed nothing in response to the motion (or otherwise) since the date of the notice. It is recommended, for the reasons that follow, that the unopposed motion be granted.

**Medical Care**

For a convicted prisoner to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of

mankind. Estelle, 97 S.Ct. at 291-92. Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

Plaintiff's complaint and lengthy attachments include an assertion that Plaintiff injured his neck and back when he fell at a restaurant in 1998. One physician opined, during personal injury litigation, that the injuries related to a pre-existing condition that arose when Plaintiff was a member of the Marine Corps. Plaintiff settled his personal injury claim and filed a claim for service-connected disability benefits through the VA, but Plaintiff was soon convicted of a crime and sentenced to prison.

Plaintiff arrived at DWCC in 2001. He alleges that he did not pursue treatment for his back and neck at that time because his injuries seemed to be in a "dormant stage" with only occasional pain. The symptoms and pain allegedly became worse in later years, and Plaintiff wrote the VA in 2004 to inquire about an appointment with a VA physician. Plaintiff alleges that defendant Debbie Scriber told him that the VA had not contacted DWCC to schedule an appointment, and he alleges that defendant Pam Austin told him that the VA generally does not see inmates absent special circumstances. Austin allegedly told Plaintiff that she would notify him of any further communications from the VA.

Plaintiff alleges that he later received a letter from the VA that advised he had failed to appear for an appointment at the VA hospital in Shreveport and an appointment at a VA facility in New Orleans. The letter allegedly included information that DWCC officials had

called to confirm the appointments but did not deliver Plaintiff, and that defendant Deputy Warden Goodwin had told the VA examiner that he preferred Plaintiff be seen at the VA facility in Shreveport (which is near DWCC). Plaintiff attributes these actions to a collusion on the part of prison officials to be deliberately indifferent to his serious medical needs.

Plaintiff alleges that defendant Dr. Pam Hearn, the DWCC physician, asked him for all information of prior treatment for back and neck injuries. Plaintiff apparently made a request for his VA records as part of his response. He alleges that defendant Angie Huff told him the request had been sent to the VA, but defendant Scriber responded to a later grievance by stating that Plaintiff had not provided the necessary information to obtain his records. Plaintiff alleges that this "deceitful tactic" by Scriber and Huff was part of an attempt to deny adequate medical treatment. Plaintiff makes much of his allegedly thwarted efforts to obtain VA medical records, but among the attachments to Plaintiff's complaint is a statement by Plaintiff in a grievance that, "I've never actually been treated at a VA hospital for these injuries." Plaintiff's connections with the VA before his imprisonment apparently were merely attempts to obtain treatment.

Plaintiff complains that defendant Dr. Singson examined him in response to a medical request. Plaintiff alleges that the examination was limited to a hemorrhoid complaint and did not address complaints of back and neck pain. Plaintiff alleges that he informed Dr. Singson of his history of back and neck pain, but the physician responded with "rude" questioning

about the VA appointments and VA medical records. Plaintiff filed a grievance that requested appointment of a new doctor and sensitivity training for Dr. Singson.

Dr. Hearn examined Plaintiff in August 2005, but Plaintiff complains the examination was inadequate because the physician merely checked his knee reflex and did not allow the nurse to take Plaintiff's vital signs. Plaintiff filed a grievance that very day and requested an appointment with an outside physician and a requirement that Dr. Hearn undergo sensitivity training.

Plaintiff alleges that he discovered that his prison medical records had discrepancies entered by Dr. Hearn and Nurse Scriber. He asserts that Dr. Hearn made an entry that Plaintiff played baseball despite his complaints of daily pain. Plaintiff appears to deny making such a comment. He also complains that his record did not include two release forms that he signed in an effort to obtain outside medical records, and the records did not include any comments by Dr. Hearn addressing X-rays that were taken in August 2005.

Plaintiff alleges that he made an emergency sick call in August 2005 to request treatment for what he described as unbearable pain and numbness in his legs. Defendant Grace Lee allegedly chastised Plaintiff for declaring an emergency and refused to examine or treat him. Plaintiff filed a grievance. Plaintiff also alleges that he was once wrongly dispensed a medication that caused side effects including nose bleeds and pain behind his eyes. The problems apparently resolved. Neither the pharmacist nor other personnel allegedly involved in that alleged incident are named as defendants.

Plaintiff alleges that once in December 2005 and once in January 2006 he sought medical care for pain in his lower back and/or legs. He asserts that he was not examined by a physician but was charged a $3.00 co-pay fee. (Plaintiff does not say whether he was examined by a non-physician, such as a nurse, on those occasions.) Finally, with respect to medical issues, Plaintiff alleges that he filed an emergency grievance to a mental health expert to request immediate consultation for stress caused by the lack of treatment for his medical conditions. Plaintiff filed numerous grievances related to this and his other medical issues.

Plaintiff is obviously not pleased with the care he has received, but he has received care. Dr. Hearn, Dr. Singson, Nurse Scriber, and others have examined Plaintiff, X-rays have been taken, and medication has been prescribed. Plaintiff is dissatisfied with the interpretation of the X-rays and the treatment that has been offered, and he would prefer to be treated by a VA or other outside physician.

Plaintiff's disagreement with the methods of treatment afforded by the prison officials does not state the constitutional claim for deliberate indifference to a serious medical need. Norton, 122 F.3d at 292. The Eighth Amendment is limited to claims of cruel and unusual punishments, which the Supreme Court has defined as deliberate indifference to serious medical needs in the context of prison medical care cases. Deliberate indifference encompasses only the unnecessary and wanton infliction of pain that is repugnant to the conscious of mankind. Estelle, 97 S.Ct. at 291-92. Furthermore, "plaintiff has no automatic

constitutional right to an outside referral or specialist." Lett v. Buckhalter, 2008 WL 321833, *3 (S.D. Miss. 2008). And "[t]he decision regarding if and when the plaintiff should be seen by an outside physician is best left to the prison officials." Clifford v. Stalder, 2007 WL 97069, *1 (W.D. La. 2007). Plaintiff alleges that he has suffered back pain and that he has been seen often by physicians and nurses, but the pain has not been treated or relieved to his satisfaction. Those allegations do not rise to the level required to state an Eighth Amendment claim, and all medical-related claims should be dismissed.

**Retaliation**

To state a Section 1983 retaliation claim, an inmate must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999). The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may plausibly be inferred. Id. at 325; Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995).

Plaintiff alleges that he has filed numerous administrative grievances regarding his medical care and even regarding the handling of the grievances themselves. Plaintiff does not allege that any prison official made reference to the grievances during the administration of medical care or otherwise provided affirmative indication that they were aware of the grievances and acting based on them. Rather, Plaintiff merely alleges the facts related to his medical claims and intersperses among them allegations that he filed various grievances.

Then, in the portion of the complaint that sets forth the various claims for relief, Plaintiff alleges that the actions of defendants Huff, Goodwin, Scriber, and Austin in connection with what Plaintiff alleges were attempts to derail appointments with the VA "were done maliciously and with a deliberate intent in retaliation for the Plaintiff exercising his right to the administrative remedy procedure" at the prison. Complaint, ¶ 52.

Prisoners do have a constitutional right to file grievances to complain about prison officials. Woods, 60 F.3rd at 1164. However, Woods directed that trial courts must "carefully scrutinize" these claims. Id. at 1166. Plaintiff has not alleged any statements or actions that would be direct evidence of retaliatory motivation, so he must base his claim on a chronology of events from which retaliation may plausibly be inferred. The facts alleged are that prison officials took their stand and actions in connection with the VA appointments before Plaintiff ever filed a grievance related to his medical care. The allegations against Dr. Hearn and Dr. Singson also reflect that they took the actions complained of before a grievance was filed that targeted them. There may be some temporal proximity between various complained of events and some grievance, but the order of the events does not suggest a cause and effect relationship. There will almost always be some temporal proximity between any act of prison officials, good or bad, and a grievance filed by Plaintiff because Plaintiff always has at least one grievance pending. Thus, any action by any prison official will almost always be taken at a time that is near some step in the administrative process. Plaintiff may not, by continually filing grievances, automatically convert every

action of a prison official to a claim of retaliation. Plaintiff's allegations of retaliation are conclusory and do not give rise to a claim that can overcome the qualified immunity defense asserted the several defendants. Furthermore, there is no indication that any actions by prison officials deterred Plaintiff in the slightest from prosecuting his grievances or this lawsuit. See Bell v. Wathen, 2008 WL 1743887 (5th Cir. 2008) (dismissing claim when alleged retaliation did not deter prosecution of claims), citing Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006) ("Retaliation against a prisoner is actionable only if it's capable of deterring a person of ordinary firmness from further exercising his constitutional rights."). All retaliation claims should be dismissed.

**Medical Records**

Plaintiff alleges that some defendants placed false information in his medical records and that their failure to correct or expunge the information from his prison records violates Due Process. Complaint, ¶ 57. Plaintiff does not articulate how he would suffer harm of constitutional magnitude from the allegedly erroneous information about his participation in baseball or other events recorded in the files. The Fifth Circuit has affirmed the dismissal of an inmate's claim that failure to expunge erroneous information from his prison record violates the Constitution. See Valasquez v. Woods, 329 F.3d 420, 421-22 (5th Cir. 2003). This claim should also be dismissed.

**Inmate Legal Assistance**

Plaintiff alleges that he submitted a written request to Deputy Warden Goodwin and asked that fellow inmate Robert Hallal be allowed to assist Plaintiff with his preparation of the complaint that he would file in this civil action. Goodwin allegedly did not respond to the request. Defendant allegedly filed a grievance with respect to this issue, but had not received a response as of the time he filed suit. Complaint, ¶¶ 47-48. This claim appears to be susceptible to a defense based on failure to exhaust administrative remedies prior to filing suit, but that is an affirmative defense that must be pleaded by defendants, and they have not raised it. Defendants have attacked the claim on the merits. They are correct that prisoners "have no right to a particular prisoner's help in legal matters as long as the putative recipient's constitutional right of access to the courts is not infringed." Tighe v. Wall, 100 F.3d 41, 43 (5th Cir. 1996). Plaintiff was obviously able to file a lengthy complaint despite the lack of assistance from Mr. Hallal. Prisoner's allegations do not give rise to a viable claim of denial of access to the courts.

Accordingly;

**IT IS RECOMMENDED** that the Motion to Dismiss (Doc. 41) be **granted** and that Plaintiff's complaint be dismissed with prejudice for failure to state a claim upon which relief may be granted.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of July, 2008.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE